All right. We'll hear from Mr. Levinger first. Thank you, Ronnie. May it please the Court, I'm Jeff Levinger for BDRI. This is a construction case in which the District Court rejected the claims and counterclaims of both parties, with one very important exception. The Court awarded KCSR over $4 million based upon its claim that BDRI wasted ballast, the ballast that KCSR was required to supply in the project. Now, our brief gives the Court five reasons why this award cannot stand, but I want to focus on three of them today, unless the Court is interested in certain others. First of all, they failed to prove the reasonableness of the costs that they seek to be reimbursed for with respect to the ballast. Secondly, they waived and their stop from asserting their claim for wasted ballast for the very simple reason that they willingly, knowingly supplied everything we asked for without any complaint, without any claim that there was a breach until after the project was over, after we were off the job, and after it was too late for us to make any sort of corrective or preventative measures. And third, they used an undifferentiated damages model in which they assumed that every single ton of ballast in excess of the amount that the parties anticipated was actually wasted and was the result of a breach by BDRI, and the record doesn't support either assumption. It's an impermissible undifferentiated... Let me ask you this. On the issue of the reasonableness, if we were to conclude that Texas law is less than fully illuminating on the question, would it make sense for us to certify the question to the Supreme Court, and why or why not? I don't think so, Your Honor, because I think Texas law is very clear on the issue of reasonableness. I think the Texas cases make clear that whenever a plaintiff seeks to be reimbursed for the any sort, they need to prove that those expenses are reasonable. And that's true... What would that testimony have entailed here? What should they have done that they did not do? Just say, is this reasonable, one question, or do they need to do more? I think it's more juxtaposed than just the magic words, was it reasonable, in particular because this accountant that they called was not even competent to offer that kind of testimony. But it would be testimony from someone involved in procuring the ballast, by way of example. Somebody from the procurement department, or somebody who's familiar with supplying that type of product. So it's not good enough that this is the price, and the people they've always bought it from, and the price they've always paid for when it was going to be entirely out of their pocket, not in a lawsuit, being able to put it on someone else's ledger? That's not good enough. In fact, as in the Mustang Pipeline case, where similarly they called an accountant, and the accountant said, you know, here are all the invoices, in great detail, in the testimony, here are all the invoices, here's what we paid. But so if that's not good enough, what is? They have to show what other people pay? I mean... I think so. I think they would have to call somebody, well, there are two different ways to do it. You would call somebody from another railroad... And say, what do you pay? To say, this is what we customarily pay for the ballast, for materials, for the crew, for the labor, for the locomotive. In the Mustang, they said, as the Court of Appeals noted, there was evidence that the contract entered into with Sunline was substantially higher than what they initially bid, and so this shows that there's some indication that the prices are being somewhat inflated. There was evidence that the wet conditions had improved, and so maybe the cost should have been less. And so, I mean, there was some evidence in Mustang that the price paid was perhaps higher. And here, the evidence is really to the contrary, that they paid the ordinary rate that they'd always paid. Why isn't that at least... Not that what you pay is the evidence of the reasonableness, but that what you paid at the moment before there was a controversy is some evidence. Why isn't that some evidence of reasonableness? Well, for two reasons. One is because they didn't prove that what they paid before was reasonable. There's no evidence of that either, so... Let me ask you this, right? Couldn't the judge infer that this was a negotiated price between two sophisticated companies, and that that would indicate reasonableness? I mean, the railroad had no reason to want to claim that they paid more, didn't have any reason to pay more than they could get it for. In other words, they were presumably getting it for the cheapest price they could. Well, exactly the same thing could be said, Judge Davis, with respect to their other counterclaim, where they paid money for additional contractors. But everyone knows, I hire a contractor in my house, or I solicit bids, they are wildly divergent. I mean, that's just the experience everyone has. One can be double the price of the other contractor. This ballast is much more like a commodity. Let's say it wasn't ballast, but it was oil, and the other side had to overpay for oil because of your client's wrongdoing. And, you know, I can look in the paper each day at the market price for oil. Would you still say they had to do all this proving up you're talking about? Well, I do, and in particular, they said we had to rush to supply as much ballast as we could as quickly as we could. Some of the testimony was that they got it from Arkansas, where it was much more expensive, both in terms of raw materials... But wasn't it still at the price that they were paying anyway? Well, not necessarily. We don't know that because the accountant was asked the question, have you made any comparison of what was paid before May 1, which was kind of their cutoff date, to what you paid after May 1, and she said no. But even part of what they got from Arkansas, it wasn't like day 20 happened and all of a sudden that was the excess ballast that your client was going to be on the hook for. They're going along, redoing the track, and what the judge found is along that whole process your client was requiring them to use extra ballast. So it's not like there's some clear point at which all of a sudden it all became on you. The theory is that throughout the time when they were paying previously and then from Arkansas, some of this ballast ends up being held to be your client's responsibility, some, as the contract contemplated, was their responsibility. Well, not exactly accurate because on February 10th was the request for the additional ballast, which they met, which goes to my waiver and estoppel point. They willingly met that. But they actually started using May 1 as their date for quantifying the costs. That's what the accountant did. Well, we've talked about the ballast. Let's talk about the transportation. The other big cost was the transportation cost, right? Well, yeah, there's a lot of different features to that. They've got their own local... Isn't the railroad... I mean, if I get in some lawsuit and I have to say why this is what it costs for me to fly on Southwest to New Orleans, I have to prove that's reasonable? I mean, railroads, I think, are even more standardized rates than airlines. I mean, the railroad rates are what they are. What proof is needed that it was reasonable to pay the standard railroad rate? Well, again, I think the case law is very strict on the subject, and you need to show they could have called one of the suppliers to say, the court has to say, this is what we charge. There's a limited number of airlines, to use Judge Costa's example, and so maybe you could find some obscure airline that's got no safety rating or something like that that might have charged less, but Southwest, American, and Delta all had the same fare or slightly different by $5 or $10, and we have to say that's reasonable? Maybe we think it's totally unreasonable, but it's the only way we had to get from point A to point B. Well, there's just no way to fill the missing gap here. I mean, if they had called somebody on the supply side to testify what they customarily charge, or if they'd called somebody from the procurement to testify about what they customarily pay. But the question is, the Mustang requirement isn't some, you know, just running on a treadmill kind of exercise. It is intended to address the situation we were kind of alluding to earlier. Oh, you breached the contract, so I'm going to stick it to you. I'm going to go start buying stuff at the most expensive store. I'm going to go get my, you know, macaroni and cheese at some real posh special garden store instead of at, you know, some local grocery store, and stick you with all of that. That's the implication here and what the Mustang case is intending to avoid. What Judge Costas is pointing out is these particular expenses just don't fall in that. There isn't a high-end ballast store and a low-end ballast store and 10 million different trains that could run, and these are all fairly standard expenses, and given that, does that in any way change the analysis? Well, I think two answers. One is ballast is not ballast. The testimony was that ballast coming up from Mexico is a lot cheaper than the ballast coming down from Arkansas. They said we were scrambling to get as much ballast as we could as quickly as we could. They got a bunch of it from Arkansas, but there was no testimony that what they paid was reasonable vis-a-vis Mexico. But is that, I mean, if you put me in the after, then I'm going to pay a higher rate. I can guarantee that. And is that my fault or yours? Well, and again, I don't think the case law turns on, you know, is somebody sticking it to somebody else. You see this reasonableness requirement even in attorney's fees cases. Take the Gibson Jelk case, for example, where they said, you know, the guy testified to a rate, and the court said that's no testimony. That's not evidence. Because attorneys can inflate their rates. I mean, there is that incentive there for padding. Well, let me ask you this. Let me ask you this. If we say, if you're, if we agree with you that they had to produce this testimony of reasonableness, and they didn't. Right. Obviously, you're saying we have to vacate. Is that the end of it, or can we remand for further evidence? Or you're saying that they've lost their chance to prove it. On that issue, that would be the end of it. Because there's no evidence in the trial that they had, then they had their opportunity to present. There's no evidence of a critical element of the case, which is reasonableness. In fact, it would be the same result that the district court itself did on the additional contractor claim, which I really don't see any difference. Those were contractors who had been on the job. They hired them to do this work, this additional work. The court held correctly that there was no evidence that the cost paid for those additional contractors was reasonable. Same thing here with the waste of ballast. That's the way I see it. The contractor, or rather the railroad, didn't have any choice in who would haul the ballast out of the quarry, right? Well, yes it did. It drew the ballast from a couple of different sources. But didn't the railroad have an exclusive right, some particular railroad had an exclusive right to haul it out of the quarry? Well, out of Arkansas, they had to pay Union Pacific an additional fee to haul it down. Out of Mexico, I believe they used their own trains. And they were trying to get every last dollar from BBRI. They were including overhead and profit and everything without any testimony that any of it was reasonable. They were trying to stick us for the crew costs, which is fixed costs anyway. They're trying to stick you for everything. You're trying to get stuck for nothing. And what I'm saying is there may be a distinction among these different categories. Overhead, I can see how that could be inflated, needs to be shown to be reasonable. The closer we get to something that's kind of a defined commodity that everybody's paying that price, the more I say, hmm, I'm not sure that you really can say, wow, they just lacked evidence by having shown that they got what they normally, ordinary course of business. And that's the problem, Judge Haynes. They had a single figure, $31.69, I think, by which they multiplied every differential, every ton differential. And that consisted of components like the ballast materials, but also the Union Pacific costs, no testimony on reasonableness. They also included the crew cost, the locomotive cost, the ballast lease car cost. Given that answer, I want to go back to Judge Costa's point, which is, you know, what if we were to agree with you, is that the end of the matter? And you said yes. And I know the ordinary rule, you got a burden of proof and you don't meet it, that's the end of it, you don't get another shot. But there are cases where, because the judge was trying it under a misapprehension of the law, or we clarify the law in some significant way, we kind of say, well, wait a minute, that everybody was kind of under this misapprehension, we ought to give them another chance. Would that kind of rule apply here? I certainly have not seen any cases to that effect with respect to the area of reasonableness. If you don't meet that element under the case law, and I've cited five or six cases, including some from this circuit, the answer is it's federal proof. Is that federal law or state law on that question? The Fifth Circuit case was looking to state law on the question. But the question of how we treat insufficiency of the evidence, isn't that a federal question even in a state law case? What is sufficient would be a state law question, but what do you do with insufficiency? Isn't that a procedural question? Well, I think so. And the question is, is there more than scintilla of evidence from which a reasonable jury could find reasonableness in this case? Because we know that's an element, and the answer I submit is no. And traditionally, and without exception, at least in Texas, that's a rendition. I've got a couple minutes. I want to talk about estoppel and waiver, if I may. The Court recognized that these were affirmative defenses that we pleaded, but the Court didn't deal with them at all, other than to sort of conclusively at the very end say, I'm denying everything else. That's not sufficient. This Court, I think, can write on waiver and estoppel, because the really material evidence on the point is undisputed. Or the Court could remand for additional findings on waiver and estoppel. The key event with respect to waiver and estoppel occurred on February 10, 2009. That's a date that they don't really acknowledge in their brief. But on that date, BBRI requested more ballast, significantly more ballast. It went from like 2,600 tons a day to 4,600 tons a day. At that point in time, they knew they had the right, under the contract, to say that we were wasting ballast. They'd warned us about wasting ballast. And they were keeping track of how much ballast they were supplying and how much ballast there would be at the end of the day. And by doing the numbers based on their own documents, Exhibit 551, they could very much see that they were way in excess, based on our request of what they would have had to supply, based on everybody's contemplation. But notwithstanding that, they supplied it willingly, knowingly. And that, in my view, and I think under the case law, amounts to waiver and or estoppel. Okay. Thank you. You've reserved time for rebuttal. We'll now hear from Mr. Wicks. May it please the Court. My name is Paul Wicks on behalf of the Kansas City Southern. We tried this case for, it was eight or nine days, with Judge Lindsey. And he was very thorough and detailed in going through everything. And there was a lot of hotly contested issues. One issue that was never contested was the reasonableness of the ballast costs. It was a given. It was a burden. It is. This is what's shocking to me. You have nine days of trial, and no one said, I mean, it's such a standard question, was it reasonable and necessary? Even if it's magic words or whatever, this just didn't come up? I mean, it just seems really strange to me. It's such a long trial that no one thought to ask about that, such a basic point. And you're right. It did not come up. And have I kicked myself over the past two years for not asking those four words? Yes, I have. Did we go to great lengths to prove the reasonableness of our costs? We did. Okay, so I think we all agree, even Mr. Ledinger would concede, it's not the word, it's the evidence. So the word reasonable didn't have to be used. So if we were to conclude, you did have to prove reasonableness. He said you glommed together a bunch of goo and said, this is the number. Answer that and show us how you didn't glomme it and how, in fact, you did show it to be reasonable, even if you didn't use the word. Sure. First off, the first component is the actual purchasing of ballast. Prior to this project's beginning, KCS had arms-length negotiations with ballast suppliers, with mines, to acquire a huge amount of ballast in great quantities. This was the largest new construction of rail in probably 30 years in the U.S., with 79 miles of brand new rail. So this was a big deal. So KCS's expectation going into the contract was, we have to pay for the ballast. So when they had to pay for more, their expectation changed and their cost increased. So that was an arms-length transaction. There's 400-plus thousand tons of ballast purchased for the entire project. Only 70,000 of that is what we was wasting. It's the same price, or the same average price. What about this Arkansas? Okay, but they're saying that Arkansas was more than Mexico and y'all went to Arkansas. And I don't recall that testimony. There was different prices. Arkansas had, that's the Granite Mountain, where you had to use the UP transportation for a portion of it. When you go to Mexico, you had to have some customs fees and things of that nature. What KCS did was get the ballast from whatever sources were available close. And was there evidence of that? Yes, yes. There was evidence that we got it from wherever we could get it. You're saying if you show a negotiated rate, you're showing you got it from the source, the only sources available at the time, that that should be sufficient given that this isn't the same thing as macaroni and cheese that you can probably pay a dollar per box or $50 per box. It's rock. It's rock. Now, there was a case we cited where there was evidence that farmers would have paid something to do something that wasn't done. It was a case we cited in our letter brief. And the court said, well, that's evidence that somebody else would have paid that amount, so that's sufficient to support a verdict. Here, what we have is evidence that KCS would have paid that same amount. And they did it in ordinary business context, not in a, we're going to go stick it to them because there's a breach. And you think that's the distinction Mustang's making? I know you don't think Mustang applies here, but if it does, is that the distinction Mustang's making? The big distinction with Mustang is that there was evidence that the other contractor was significantly higher than what had been done before. Also, that's a new party coming into complete work. This is nothing changes. KCS is supplying ballast before, during, and after the entire project. Part of the time that ballast is coming in, BBRI is wasting it. But the cost to KCS is the same throughout. So it's kind of like you say, what's the benefit of the bargain? Well, the benefit of the bargain or expectation interest for KCS is that Balfour was going to build the track according to the specs, which means without waste. To the extent they didn't meet that expectation, their expected costs go up. So their actual incurred cost is what has increased, what has changed. So to bring KCS back to their... How would we frame... If we assume that Mustang applies here, and I know you disagree, but we understand that there can be different circumstances, such as an ordinary course, kind of limited availability sort of item, how would you phrase that rule? If we were to explain the Texas rule in this opinion in a way that you are advocating, how would you write that so that I can understand that? If the question is we need to provide evidence of reasonableness, then I think that you go to a variety of matters. One is the arms link transaction to buy in bulk for all this... All the ballast that was used pursuant to this contract that was made way in advance of the job? Different contracts with different minds. But all made pursuant to a contract entered into long before the job? Before the job, before the project got started. So you think that's some evidence of reasonableness? Sure. Because, like Judge Davis said, the railroad doesn't want to spend more money on rock than it needs to. And also, you've got to realize, this is a logistical nightmare where you've got trains coming in, they've got to get unloaded and then moved out, and then get to a mine that then is ready to provide them with rock. So they've got to go to the right mines. All that's telling where they go and when. The costs are generally the same. There may be more transportation on one, there may be more customs on another, but that's not the real issue. The issue is... What about this gooey number that he said, this 3167, where you're just putting everything together. How do you answer that? Yeah, and that's not gooey at all. Roughly half of it is the cost of the ballast. The other half is transportation costs where... You don't have overhead in it? You don't have all those things he was saying? He said that we had overhead and profit. I don't recall that testimony. What she said is these are what our actual costs are. These are the numbers that, for instance, if there's a derailment and we need to charge UP for that derailment for this power being down, this is the same calculation we use. So that's evidence of what another party would pay. I'm talking too fast. But say you have a derailment of a KCS locomotive on UP's lines and that KCS locomotive can't be used for five days. Then we charge UP for that power, and these are the same kind of calculations they would do. When you're billing the government, the calculations for the ballast cars, the crew costs, and the locomotives, these are the same GAAP-approved calculations of actual costs that we bill to other people. So there's evidence that other people are paying this, not just Balfour Beatty. None of this was, let's create something for this lawsuit and go and stick it to Balfour Beatty. This was things that's been done in many other contexts throughout the course of the railroad's business. So there's not a lot of goop. In the normal course of business, everybody's paying $10 for mac and cheese, then you can charge $10 for mac and cheese. Right. And so your argument is we really just did not say the magic word, but we otherwise did everything you do to support the magic word. Absolutely.  We looked at the actual ballast lease per cars, the train crews. To meet Mr. Levenger's standard, we would have to have someone who's an expert on employee benefits, someone who's an expert on collective bargain agreements with engineers and conductors, someone who's an expert in negotiating with rock quarries. What about another railroad guy that uses ballast in transit and does some of the same things y'all do? What about that guy coming in? Well, you could do that. You could do that. But certainly, Lynn Carnes is someone who, as an accountant who sees all these things, sees these ballast invoices, analyzes these crew costs, analyzes these ballast costs. She sees those as well. She certainly... How does she know if they're reasonable? I mean, if you're in the industry, you go, oh my gosh, I would never pay that for ballast. Or yeah, that's roughly what I pay. I mean, people in the industry, I don't know a lot about the ballast industry, but like the oil and gas industry, you know, people in the industry know what a barrel of oil is costing at any particular time and can say, yeah, that was close or not. How could she do that as an accountant? All she's doing is dealing with the numbers given her. Well, because she's seeing those numbers in other contexts. She's not just seeing it in this context. She's seeing it throughout her career in dealing with ballast costs, dealing with locomotive power, dealing with other crew costs. All right. If we were to conclude that you had to prove reasonableness and you didn't, what's your answer to Mr. Lovinger's position that that's the end, you're done, no re... Well, obviously, I think there's a ton more than a scintilla of evidence. I think that the court should provide reasonable inferences from the facts to support a district court's bench trial. Okay, and I get that, but what... No, it should be a remand. I mean... Why? What theory... Because generally speaking, it's true. You have a burden of proof. You don't meet it. We're done. What would change that? What would alter that trajectory in this case? Well, I think it would be an extension. You'd be extending the pipeline case, Mustang Pipeline, to a place where it's never been, where there was no dispute of reasonableness of the cost, and then all of a sudden that gets jumped in when there has been evidence, substantial evidence, provided of the reasonableness. I think from a fundamental fairness standpoint, if the court's going to say that we need to have experts on all these components... Now, for one, it's going to add a week to the trial. That's an exaggeration, but it's certainly going to add a fair amount to the trial, but we should have the opportunity to provide that proof. On the waiver issue, he touched on that. That one, I think, is just a misunderstanding of the fact. Again, this is a factual review on waiver. They're saying that they couldn't have corrected their wasting of ballast. As we've shown, once the ballast is on the ground, it's wasted. It can't be recovered. It would cost ten times more to recover it. There's also evidence that Lee Peak complained at the beginning of the project that they were wasting too much ballast. The punch list, I think, is misunderstood. The punch list on a project like this is not something in your normal construction contract that gets done when everything's finished. As certain rail gets built, they high rail it with trucks, and they go over it, and they continually update the punch list throughout the project. On that punch list, they would write wasted, excess, excess ballast, and so they were continuing to give notice. The other issue is, what did they want us to do? Are we supposed to say, get off our project because you're wasting ballast? We had a duty to mitigate. If this thing were to get delayed anymore, the cost to KCS would have been of a much greater magnitude than the two million dollars we paid in ballast. Let me ask you back to the reasonableness. I'll be honest with you, that's the only issue that I see has any, I can't speak for my colleagues at all, but that has any heft in this case. Should we certify the question to the Texas Supreme Court of what the law is in this kind of set of facts? I really think that the, again, going back to what I would say, if you don't agree with me, I'd say yes. But I think that the inferences that can be drawn are not that hard. No one's taking any leap of logic. I mean, basically, you'd have to say that, you know, Pilgrim's Pride doesn't know how to buy chicken feed, and Ford doesn't know how to buy sheet metal, and that their costs that they pay for it in the ordinary course of business are unreasonable. I mean, these are publicly traded companies subject to audit, gap accounting, and everything else. What does the UCC say about that? You know, you're talking about cost of goods. Does UCC have a rule on that? I have no idea. You know, I'm going to look, because section two is full of all these rules about the ordinary course of business, and when you were saying that, it kind of hit me like I wonder if they have a rule about this. And they do talk about, now, again, this isn't a UCC case, but it might provide some guidance, but the UCC does talk about arms-length transactions. We are talking about cost of goods and part of it. It's not a UCC suit, but the reasonableness of the goods, I mean, that would be instructive anyway. It may not be dispositive, but. Sure. No, I think that's right. The only other issue that Mr. Levener didn't touch on, because I have a little bit of time, is the undifferentiated damages. I think that's just a misunderstanding of what Lee Peek calculated. Just to be clear, what Lee Peek did, as he said, it should be one foot shoulder and then a two-to-one slope, and he calculated whatever that volume was as what was needed. That was KCS's expectation. Some areas, instead of having 10 inches, might have had 18 or 20. He took that into account. So even though that 18 or 20 might have been wasted or might have been too much, that was not included in the needed ballast. So there is no undifferentiated ballast. Okay. Thank you. No more questions, Ella? We have your argument. Thank you. Well, I welcome the court to look at the 20-some pages of Ms. Karn's testimony, because you just will not be able to cobble together anything that will amount to proof of reasonableness there. At bottom, all she did was what was condemned in Mustang Pipeline, and make no mistake, Mustang Pipeline didn't ultimately go off on the issue of were they trying to stick it to the defendant. It went off on the idea that all they offered was proof of what they paid and what was charged. But that's at a defined time when maybe it was more expensive. What Mr. Wicks is arguing is, if I'm always paying $2 for mac and cheese, and then now we have the problem, and I'm still paying $2 for mac and cheese, and that's what I'm charging you, then that is some evidence, because that's what I paid sort of the last peaceable possession kind of argument. The last, before there was any controversy, when I had every incentive to pay the least amount for the quality mac and cheese that I wanted, I paid the $2. And that's what I've, you know, I've been paying all along. Why isn't that at least some evidence? Well, they've not cited you any cases that go through this kind of a before and after analysis. What they cite you are cases where... It's unrejected. It just seems to me common sense. I mean, there's the mac and cheese analogy. I'll go back to my side. I fly here 10 times a year. I pretty much pay the same price every single time. And let's say the 11th time I fly here, it's because of some lawsuit, and I can pass that cost along to a tortfeasor. You're saying it's not reasonable at a trial for the fact finder to say, well, because he paid that same amount 10 times when it was coming out of his pocket, that's not enough to say that the 11th time it was reasonable. It seems, I mean, common sense has, doesn't it still mean something in the law? How can that, I mean, it just seems to me you want, you're saying I'd have to bring in an expert in the airline industry to say, yes, the cost that Judge Cost has paid ever since he flew to New Orleans is a reasonable one. And that's just, it's those formalities of meeting experts. I mean, that's why litigation is getting so expensive. It's why cases don't go to trial. It, I just, what's a compelling, rational reason in my hypothetical why I should have to have extra evidence that my airfare is reasonable? Well, your hypothetical is much simpler than what they're seeking in this case, because what they're seeking in this case are multiple components of this so-called wasted ballast cost. It's not just the ballast materials like your airplane. It's the additional... The railroad. ...specific charges. It's the ballast lease cost, none of which they testified were incurred before. It's the crew cost. It's the locomotive cost. Well, if we were to conclude that some, that reasonableness is required and there is some evidence on some aspects, then is that something we'd set by? So, for example, we said the actual cost of the ballast, there's some evidence, but there's not evidence on, say, the transit cost. Then what would we do with that? Would we send that back for a... That could be a remitted-er type situation where you modify the judgment to correspond with... We do, or Judge Lindsey does. Either way. I think this court could, depending on what you found to be unreasonable... I'm sort of not big on finding facts anymore. Yeah, it could be... Been there, done that. Right. It could be a remand to determine, to recalculate based on what component was proven to be reasonable and what wasn't. I do want to respond to the comment about the undifferentiated damages model, which I think is a huge problem here. The problem is that they assume that every ton of ballast in excess of the amount they expected was, A, wasted, and, B, the result of the breach, neither of which was true. The waste, as defined by their people, was the amount that went outside the track structure and provided no support to the track. That was their definition of waste. Yet, as the court noted, this on page 3717, they made no effort to quantify the ballast that went outside the track structure and provided no support, their definition of waste. In fact, the court said he didn't think they could even quantify it. That's a problem. The other problem is they assume that everything was the result of a breach, again, not true. The undisputed evidence showed that we laid 11.86 inches of ballast under the track across the entire 65 miles. Now, you may say, well, what's so significant about that? What's significant about it is that the contractual specs called for 10 inches plus or minus 2. 11.86 is within the contractual specs, but it's at the very top end, nearly 12. So, was Lindsey in clear error in finding that you didn't follow the specs? Well, he didn't really say that with respect to the depth. He made another comment about there was a deviation of 1 inch per 1,000 feet. There's no evidence of that. They admitted we did 1 half inch per 1,000 feet variation, which is within the specs. It was undisputed that we laid 11.86 average depth under the track, which is within the specs, and yet, if I can finish my question very briefly. Well, you're kind of... I know, I'm kind of rambling. One sentence. The reason we had to put so much under there was because of the subgrade, which was the and not us. All right. So, that accounts for the undifferentiated model. We appreciate both sides' arguments. The case is under submission, and we're going to take a 10-minute break. Thank you.